IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

STEPHEN MILLER                                                                                    PLAINTIFF

v.                                                              CIVIL ACTION NO. 1:24-CV-51-SA-DAS

TRONOX, LLC                                                                                      DEFENDANT

ORDER AND MEMORANDUM OPINION

On March 11, 2024, Stephen Miller filed his Complaint [1] asserting claims for negligence, negligent supervision, negligent infliction of emotional distress and seeking to impose supervisory liability against Tronox, LLC. Now before the Court is Tronox's Motion for Summary Judgment [64]. Having reviewed the parties' submissions and the relevant authorities, the Court is prepared to rule.

*Background*

This is a premises liability case involving a slip and fall at Tronox's titanium dioxide manufacturing facility in Hamilton, Mississippi. The underlying facts are relatively straightforward.

Miller is a welder, pipefitter, and fabricator with approximately 35 years of welding experience. During the relevant time period, he was an employee of Lavender, Inc. and was working at Tronox's facility under a master work agreement between Tronox and Lavender.[1] To provide context, since 2016, Lavender has performed numerous projects for Tronox and Lavender employees have worked in all areas of the Hamilton facility on a regular basis.

In February 2022, Miller was assigned to work on a welding and pipefitting project at Tronox's Hamilton facility. His first day on the job was Monday, February 7, 2022. Miller testified

---

[1] The master work agreement expressly provides that Lavender "shall act solely as an independent contractor in performing the Work contemplated by this Agreement[.]" [64], Ex. 1 at p. 8.

that he and his son, who was also hired by Lavender to work at the Tronox facility, arrived at the guard shack that morning where they met Eric Sellers, a Lavender supervisor. Sellers escorted them to a building where they participated in an orientation, which included an approximately eight-hour long safety meeting conducted by Tronox.

During the safety meeting, various types of safety hazards were discussed. Although the extent of the discussion is disputed, one of the safety hazards covered during that meeting was the existence of "slurry." For context, titanium dioxide is produced in both a dry state and a wet state. In a wet state, the product is often referred to as "slurry." As described by Todd Goldman, who holds the position of Safety Lead for Tronox, "[d]ue to the wet nature of slurry, slick surfaces are an even more prevalent hazard in the area where slurry is produced and stored." [64], Ex. 2 at p. 2.

The following day, Miller worked on a project running pipe, which he completed either Wednesday or Thursday of that week. Then, Miller started working on a second project involving installation of PVC pipe in the slurry storage tank area of the facility. He worked on that project the remainder of the week and intended to continue working on it when he returned the following Monday, February 14, 2022—the date of his fall.

When Miller arrived at the facility on February 14, 2022, he waited for Sellers, who was the foreman of the project, for approximately 30 or 45 minutes. According to Miller, Sellers was on site but was inside Lavender's field office located at the facility. At around 7:30 AM, Miller and Daniel Howell, a Tronox employee, decided to walk to the job site to begin work for the day. Miller testified that Howell was going to show him "a job scope for that day." [64], Ex. 3 at p. 14. As the two walked, Miller slipped, fell to the ground, and broke his femur. In his deposition, Miller described the fall:

2

> Q. So describe in detail what happened as you and Daniel were walking, and Markell and Bradley were 10 or 15 feet behind you observing. What happened?
>
> A. So we were going beside the tank, and we were talking as we were walking. And I'm trying to watch where I'm going, and my bad foot didn't slip. This leg, my right leg, slipped, and it slid out from me like this (gesturing). And when it did, my femur just folded, and I was sitting on my foot.

*Id.*[2]

In his Complaint [1], Miller asserts negligence-based claims against Tronox and seeks to impose supervisory liability against it. Miller contends that there was a dense fog on the morning of his fall and that condensation was in the air. According to Miller, he slipped on titanium dioxide that was "in powder form until the dew fell." [64], Ex. 3 at p. 15. He specifically alleges that "pigment on the ground caused [him] to slip and fall" and that Tronox "failed to remove or clean up the hazard and failed to maintain the area in a safe, clean, and reasonable manner." [1] at p. 2. Tronox now seeks dismissal of the claims on the basis that there is an insufficient basis in the record to hold it liable.[3]

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P.

---

[2] Although not particularly relevant as to the present Motion [64], since this is a slip and fall case and to provide context to Miller's description of his fall, the Court notes that in 2010 Miller sustained significant injuries in a motorcycle accident and eventually had to have his left leg amputated below the knee. Following the amputation, he wore a prosthesis below his left knee.

[3] Tronox also filed a Third-Party Complaint [35] against Lavender and National Trust Insurance Company. The crux of that Complaint [35] is that Tronox is an additional insured under Lavender's insurance policy with National and that National has improperly declined to defend and indemnify Tronox in this case. Specifically, Tronox contends that it "is an additional insured on Lavender's [National] policy, and Lavender and [National] have an obligation to provide Tronox with defense and indemnity as to [Miller's] claims[.]" [35] at p. 5. This Court severed that Complaint [35] from Miller's underlying premises liability claim—it has no bearing on the present issue before the Court.

56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis*

Generally speaking, to prevail on his negligence-based claims against Tronox, Miller "must establish by a preponderance of the evidence each of the elements of negligence: duty, breach, causation and injury." *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss.2017)

4

(quoting *Miss. Dep't of Mental Health v. Hall*, 936 So. 2d 917, 922 (Miss. 2006)). Tronox contends that Miller's claims fail as a matter of law because he cannot establish the existence of a duty.

At the outset, the Court reiterates that Miller was an employee of Lavender—not Tronox—on the day he fell. Pursuant to the master work agreement, Lavender's relationship with Tronox on that date was that of an independent contractor.

Under Mississippi law, "[t]he general rule is an owner has a duty to furnish the employees of an independent contractor with a 'reasonably safe place to work or give warning of danger.'" *Ratcliff v. Georgia Pacific Corp.*, 916 So. 2d 546, 549 (Miss. Ct. App. 2005) (quoting *Miss. Chem. Corp. v. Rogers*, 368 So. 2d 220, 222 (Miss. 1979)). In 2003, the Mississippi Legislature statutorily limited liability in this context by enacting Mississippi Code Section 11-1-66, which provides as follows:

> No owner, occupant, lessee or managing agent of property shall be liable for the death or injury of an independent contractor or the independent contractor's employees resulting from dangers of which the contractor knew or reasonably should have known.

MISS. CODE ANN. § 11-1-66.

In its Memorandum [65], Tronox takes the position that, pursuant to the plain language of Section 11-1-66, it is immune from liability if "*either* Lavender *or* Miller knew or reasonably should have known of the alleged dangerous condition that Miller claims caused him to slip and fall." [65] at p. 8 (emphasis in original). Therefore, in Tronox's view, it need not establish that Miller *individually* knew or reasonably should have known of the alleged dangerous condition—only that Lavender did.

Miller does not address this issue in his Response Memorandum [73]. Instead, he focuses solely on his *own* knowledge (or lack thereof) as to the alleged dangerous condition and provides no argument whatsoever as to Lavender's knowledge. For example, Miller argues that "[d]isputes

5

exist as to whether Miller knew or should have known of the danger caused by the pigment when combined with condensation." [73] at p. 4. The Court will address both Lavender's knowledge and Miller's knowledge.

    I.    *Lavender's Knowledge*

As noted previously, Tronox contends that it is immune from liability pursuant to Section 11-1-66 because Lavender knew or reasonably should have known of the existence of titanium dioxide on the ground and the potential slip and fall hazard that it could create.

In April 2025, while the parties were briefing the present Motion [64], the Fifth Circuit decided *Rose v. Nissan North America, Inc.*, 135 F.4th 1013, 1017 (5th Cir. 2025). There, Ryan Rose, an electrical technician, brought suit against Nissan "after suffering a serious electric shock while working for Automated Power, Inc. at Nissan's plant in Canton, Mississippi." *Id*. at 1015. Rose sustained the shock after he admittedly failed to utilize a voltage-detecting rod to check for energized system components before working on the system. *Id*.

Rose sought to hold Nissan liable on failure to provide a safe workplace, failure to warn, and general negligence theories. *Id*. The district court granted summary judgment on the basis that "Automated Power *and* Rose reasonably should have known of the dangers resulting in his injury." *Id*. at 1016 (quotation marks and citation omitted; emphasis added).

The Fifth Circuit affirmed. *Id*. at 1015. In doing so, the court first rejected Rose's effort to void Automated Power's independent contractor status because of the extent of control Nissan exercised over the area of the facility at issue. *Id*. Then, the court addressed the knowledge aspect:

> With that conclusion, what remains of Rose's argument collapses. Rose focuses entirely on whether he knew or should have known of the danger involved, i.e., that the A-B tiebreaker cubicle could be energized. *But Automated Power's knowledge also matters, and we have little trouble concluding that Rose's injury resulted from dangers of which Automated Power knew or reasonably should have*

6

> *known*. Mac Marsh, the president and owner of Automated Power, testified that, on the day Rose was injured, Rose violated company policy by, *inter alia*, not using the hot stick to check for the presence of energized voltages before entering the A-B tiebreaker cubicle, and Rose does not dispute that he was aware of the same. Finally, Automated Power knew that components in a tiebreaker cubicle can be energized even if a bus on one side of the cubicle is de-energized.
>
> On these facts, *there is no genuine dispute that Nissan's independent contractor Automated Power knew* that entering the A-B tiebreaker cubicle presented a danger of electrical injury. Section 11-1-66 therefore shields Nissan from liability in this suit.

*Id*. at 1018-19 (citations and quotation marks omitted; emphasis added).

As the Fifth Circuit's conclusion makes clear, the knowledge inquiry under Section 11-1-66 is not limited to the independent contractor's employee but extends to the independent contractor.[4] In short, the independent contractor's knowledge is imputed to the employee if the statute applies. *Id*. at 1017. This is, of course, consistent with the plain language of the statute which immunizes premises owners of injuries caused by "dangers of which *the contractor* knew or reasonably should have known." MISS. CODE ANN. § 11-1-66 (emphasis added).

Here, Tronox provided competent summary judgment evidence to establish Lavender's knowledge of the existence of slick surfaces caused by the presence of titanium dioxide. In particular, Tronox attached to its Motion [64] a sworn declaration of Todd Goldman, who has worked in Tronox's Safety Department since 1997 and, as noted previously, holds the position of Safety Lead. In his declaration, Goldman provides context as to the extent of Lavender's operations at the Hamilton facility and about the conditions on site:

> 4. Since 2016, Tronox has hired Lavender for numerous projects, and Lavender employees have worked at the Hamilton Facility on a regular basis throughout the facility.

---

[4] In fact, the Fifth Circuit affirmed without even addressing whether Rose personally knew or reasonably should have known of the danger.

5. Lavender has a safety representative on site on a daily basis who conducts inspections of the various work areas for potential safety hazards prior to Lavender employees beginning the job. Furthermore, Lavender maintains its own safety office at the Hamilton Facility.

6. As with other independent contractors who provide services for Tronox at the Hamilton Facility, Lavender employees attend safety orientation training and Lavender safety representatives attend daily safety meetings conducted by Tronox.

7. During these safety training and daily safety meetings, Tronox covers all of the potential safety hazards at the Hamilton Facility, including slip and fall hazards.

8. Slick surfaces are a constant hazard throughout the production area at the Hamilton Facility due to the manner in which titanium dioxide is produced. Titanium dioxide is produced in both a dry state and a wet state. In a wet state, the product is commonly referred to as "slurry." Due to the wet nature of slurry, slick surfaces are an even more prevalent hazard in the area where slurry is produced and stored. As a result, Tronox frequently warns Lavender and other contractors who come on-site about the hazards presented by slick surfaces in the production areas.

9. In my opinion, Lavender clearly knew or should have known about the hazards presented by slick surfaces in the production area, particularly in the area where slurry is produced and stored, because of (1) the large volume of work Lavender performs at the Hamilton Facility on a frequent basis; (2) the fact that Lavender maintains a safety director at the Hamilton Facility who has a duty under the [master work agreement] and OSHA to be aware of hazards in the areas where Lavender assigns its employees to work; and (3) Lavender's safety director and its employees frequently attend Tronox safety meetings where the hazards presented by slick surfaces are discussed.

[64], Ex. 2 at p. 1-2.

In short, through Goldman's declaration, Tronox details the extent of Lavender's operations at Tronox's facility, Lavender's maintenance of a safety director at the facility, and

8

Lavender's regular participation in safety training sessions and meetings during which slip and fall hazards are discussed. Goldman's declaration also paints a clear picture of the constant existence of slick surfaces in the production area and (again) Lavender's knowledge of the same.

Procedurally speaking, Goldman's declaration constitutes competent summary judgment evidence indicating that Lavender knew or reasonably should have known of the potential for slick surfaces caused by the presence of titanium dioxide, particularly in the production areas (where Miller fell). Thus, the onus is on Miller to rebut it. *See, e.g.*, *Kee v. Howard L. Nations, P.C.*, 2022 WL 3438467, at *5 (N.D. Miss. Aug. 16, 2022) ("[A]t the summary judgment stage, the non-moving party bears the burden to come forward with specific evidence to support [his] claim.") (citation omitted). He has wholly failed to do so. He provides no argument nor does he point to any evidence that would rebut Tronox's evidence. For instance, he has not provided any evidence that Lavender's safety director was actually unaware of the potential for slick surfaces or the common existence of such surfaces in the production area. He does not do anything to rebut Tronox's contention that Lavender, through its extensive experience working at the Tronox facility, was aware of this precise type of danger. Thus, Miller's position is much like that of the plaintiff in *Rose* insofar as he only addresses his own knowledge but completely fails to address the contractor's knowledge. Miller has completely failed to satisfy his burden at this stage of the proceedings.

Considering the evidence presented, coupled with Miller's failure to address it, the Court finds that there is no genuine issue of material fact as to Lavender's knowledge. More specifically, based on the record before the Court, Lavender knew or reasonably should have known of the existence of a slick surface caused by the presence of titanium dioxide in the production area where

9

Miller fell. Pursuant to the Fifth Circuit's application of Section 11-1-66 in *Rose*, Lavender's knowledge in this regard is sufficient to shield Tronox from liability.[5]

II. *Miller's Knowledge*

Although—based on *Rose*—Lavender's knowledge alone is sufficient to shield Tronox from liability, the Court alternatively looks to the arguments that Miller raised as to his own knowledge. In his Memorandum [73], he emphasizes the portion of his deposition testimony wherein he testified as to the warnings Tronox provided him during the safety training on his first day at the facility:

> Q. What type of safety hazards did he cover?
>
> A. TiCl, hydrogen gas, all this kind of stuff.
>
> Q. Did he cover slips-and-falls?
>
> A. I don't know if he did or not. He may have. I mean, it was a long drawn-out thing.
>
> Q. Did he mention slurry on the ground?
>
> A. *No, not on the ground*. I mean, he talked about slurry.
>
> Q. *But not it being on the ground, and that being a potential slipping hazard?*
>
> A. *No*. But he did tell us that -- he promised us before we left out of there that he was going to provide us with a [safe] work environment.

---

[5] While the Court specifically emphasizes the Fifth Circuit's conclusion in this regard—that knowledge of the independent contractor alone is sufficient to shield an owner from liability under Section 11-1-66—that outcome is consistent with previous decisions of the Mississippi Court of Appeals and this Court. *See*, *e.g.*, *Mendez Lopez v. Bellamare Dev. LLC*, 293 So. 3d 271, 274 (Miss. Ct. App. 2019) (holding that the trial court did not err in granting summary judgment where the independent contractor "knew or reasonably should have known about the dangers . . ."); *Pippen v. Tronox, LLC*, 359 F. Supp. 3d 440, 446 (N.D. Miss. 2019) ("Because the knowledge-of-danger requirement in section 11-1-66 is satisfied with reference to that which either [the independent contractor's employee] or [the independent contractor] knew or should have known[.]").

[70], Ex. 2 at p. 10 (emphasis added).

He also testified that about his lack of knowledge regarding the effect of condensation on the dry form of titanium dioxide:

> Q. So you knew that if there was powder on the ground and the fog and dew had gotten to it, it would become liquid?
>
> A. No, I didn't know what it would become if the fog fell on it. I knew there was powder everywhere.

*Id.* at p. 15.

Although Miller emphasizes these particular portions of his deposition testimony, other portions of his deposition are enlightening:

> Q. Okay, I understand. The substance that you slipped on, was it white?
>
> A. Yes, sir.
>
> Q. Was it noticeable?
>
> A. Yes.
>
> Q. Okay. Was it in liquid form?
>
> A. It's powder form. It was all in powder form until the dew fell.
>
> Q. Until it the [sic] dew fell?
>
> A. When the fog and the dew fell on it, then it wasn't powder anymore. It was pasty.
>
> Q. How do you know it was in powder form until the fog and dew fell?
>
> A. Because I had been working there for a week.

[64], Ex. 3 at p. 15.

He additionally testified that he had seen titanium dioxide on the ground throughout the facility:

> Q. Let me ask you this: When you were driving the job truck to that site, did you observe any other areas of the plant where there was liquid on the ground?
>
> A. Not liquid.
>
> Q. Slurry?
>
> A. A powder. Slurry, when it gets wet, it turns like paint and it's slick, but the whole plant looks like a glazed donut.
>
> Q. So you observed that in other areas of the plant?
>
> A. Yes.
>
> Q. And the whole plant looks like a glazed donut?
>
> A. It looks like a powdered donut. It's white.

*Id*. at p. 14.

Miller also testified that he had been working in the same area where he fell for "a couple of days" prior to the fall. *Id*. at p. 11.

Viewing these excerpts in the light most favorable to Miller, he did not know that dry form titanium dioxide would become slippery when it became wet from fog and dew. He specifically testified that he "didn't know what it would become if the fog fell on it." *Id*. at p. 15. However, the governing standard is not solely what Miller knew but rather what he knew or *reasonably should have known*. *See* MISS. CODE ANN. § 11-1-66. The Court will thus consider whether he reasonably should have known of the hazard.

To do so, the Court will look to what Miller admittedly *did* know. He admits that he participated in an eight-hour safety meeting on his first day at the Tronox facility—one week prior to his fall. He admits that the safety instructor "may have" covered the potential for slip and fall

12

hazards throughout the facility. [70], Ex. 2 at p. 10. He admits that he had seen titanium dioxide on the ground throughout the plant the week prior to his fall and on the day he fell. In fact, he testified that the entire plant looked like a "powdered donut." *Id*. at p. 14. He admits that the substance he slipped on was "noticeable." *Id*. at p. 15. He admits to being "familiar with the process of how the pigment is produced." *Id*. at p. 9. He likewise admits to being aware of the presence of condensation in the air prior to his fall. Yet, despite all of these admissions, Miller attempts to blame Tronox for not specifically advising him of the potential for a slip and fall hazard. The Court finds his argument unavailing and concludes that, even assuming he did not know of the potential hazard, he reasonably should have known.

In his Memorandum [73], Miller relies on the Mississippi Court of Appeals' decision in *Calonkey v. Amory School District*, 163 So. 3d 940 (Miss. Ct. App. 2014). The relevant facts of that case are relatively simple:

> Amory High School hired Calonkey to assist with the school's production of Phantom of the Opera. Calonkey helped with the set design, which included a metal catwalk with a trap door that spanned the stage ten feet in the air.
>
> Calonkey visited the set on February 16, 2011. While there, he was asked by another producer to help adjust the lights. So he climbed up on the catwalk. This was Calonkey's first time on the catwalk, which he had not helped build. He claims that he was unaware that the catwalk was missing the called-for trap door—leaving a giant exposed hole in the middle. What is more, the metal edges of the hole were dotted with metal spike-like protrusions that should have been filed down after the catwalk was welded together. Calonkey fell through this hole after tripping over wiring and lumber lying across the catwalk. He scraped himself on the metal protrusions before falling ten feet to the stage.

*Id*. at 942.

The trial court granted summary judgment in the school district's favor on governmental immunity grounds inapplicable to the case *sub judice*. *Id*. But on appeal, the Mississippi Court of

13

Appeals also addressed Section 11-1-66 and concluded that "there is a disputed fact issue whether Calonkey should have been aware of the danger posed by the exposed hole in the catwalk, based on his past work experience in theater production." *Id*. at 945.

Here, Miller contends that "[s]imilar to the plaintiff in *Calonkey*, Miller could not assume a risk he did not know existed." [73] at p. 5. Miller's attempt to compare this situation to the facts of *Calonkey* is a non-starter. Stated simply, it is not supported by the record. Unlike the plaintiff in *Calonkey* who had no knowledge of the exposed hole in the catwalk and had never been on the catwalk before, Miller himself testified that he had in the week prior and on the date of his fall observed titanium dioxide on the ground throughout the entire Tronox facility and in the specific area where he fell. The substance was admittedly noticeable. He also testified that he was aware of the presence of condensation in the air on the morning in question. His effort to liken this case to *Calonkey* is unpersuasive.

The Court finds this case to be more akin to *Tanner v. Roseburg Forest Products South, Ltd. Partnership*, 185 So. 3d 1062 (Miss. Ct. App. 2016). In *Tanner*, Howard Transportation and Roseburg had in place an agreement pursuant to which Howard, acting as an independent contractor, would transport wood product owned by Roseburg between Roseburg's plants. *Id*. at 1063. The plaintiff, Bennie Tanner, was a Howard employee and, on the date in question, "arrived at Roseburg's Oxford plant and began unloading the wood product from his truck using a Hyster forklift that was specifically provided by Roseburg for Howard employees." *Id*. Importantly, Tanner "testified that he had used this particular forklift numerous times before the accident. He also contended that this forklift always had small leaks prior to the accident." *Id*.

When Tanner got off the forklift and descended the stairs to the bay area, he slipped and fell on a stairwell at the Roseburg loading dock. *Id*. He testified that the stairs that night were "wet,

14

dirty, and oily." *Id*. Concerning the condition of the area, Tanner testified that "the steps were 'always dirty' and always had 'something like grime' on them. Tanner alleged that the steps were wet because rain water had blown into the dock. Tanner alleged that he fell because of a combination of the water and dirt on the stairwell and the presence of hydraulic or other fluid that leaked on his shoes from the forklift he used." *Id*.

He filed suit against Roseburg, asserting negligence claims based upon the hazardous condition. *Id*. The trial court granted summary judgment, concluding that Section 11-1-66 provided Roseburg immunity. *Id*. In analyzing the applicability of Section 11-1-66 immunity and ultimately affirming the trial court's decision, the Mississippi Court of Appeals looked to Tanner's knowledge:

> Tanner, by his own testimony, established he was aware that the forklift had leaked several times before the day of the incident. Tanner also testified that he knew the stairs were wet, grimy, and dirty before he fell on them. Even if Tanner had no knowledge of the specific leak at issue, as he claims, that does not outweigh the fact that he had knowledge of an ongoing issue with leaks on the forklift in question. Tanner, in sum, knew of the allegedly dangerous conditions or reasonably should have known of them. Consequently, section 11-1-66 is applicable and does provide immunity.

*Id*. at 1065.

The plaintiff's knowledge in *Tanner* is similar to Miller's knowledge in the case *sub judice*. Miller had seen titanium dioxide on the ground for a week prior to the fall and on the morning in question. He also had just seven days prior been through an extensive safety meeting where slip and fall hazards "may have" been discussed. [70], Ex. 2 at p. 10. He knew that there was condensation in the air on the morning in question, and the substance on which he fell was noticeable. Like the plaintiff in *Tanner*, the facts of which Miller was admittedly aware were sufficient such that he, at a minimum, reasonably should have known of the slip and fall hazard.

15

*Conclusion*

Ultimately, Miller's claims against Tronox are due to be dismissed. As addressed above, he has wholly failed to rebut Tronox's summary judgment evidence as to Lavender's knowledge of the existence of the slick surface on which he fell. Applying *Rose*, this failure alone is sufficient to shield Tronox from liability. And even setting that issue aside, the evidence in the record illustrates that Miller knew or reasonably should have known of the existence of the slick surface.

Tronox's Motion for Summary Judgment [64] is GRANTED.[6] Miller's claims against Tronox are hereby DISMISSED *with prejudice*.[7]

SO ORDERED, this the 11th day of August, 2025.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] In his Response Memorandum [73], Miller references other incident reports that occurred in different areas of the facility and involved Tronox employees. These arguments are beside the point and have no relevance to this case. The Court sees no need to delve into their substance. Additionally, the Court is cognizant of Tronox's reliance on job safety analysis forms that were required to be completed each day wherein Lavender confirmed that it warned its employees of potential slip and fall hazards. The forms were signed by Lavender employees. However, Miller denies signing the form on the date of his fall. Since there is an independent basis to grant summary judgment, the Court finds no reason to address the forms as part of its analysis.

[7] Tronox's Motions to Strike [71, 74] are DENIED AS MOOT. In reaching its conclusions, the Court has fully considered Miller's untimely filings. However, the Court's decision not to strike these filings should not be construed as a condonation of the failure to comply with the applicable deadlines.